Nelson, J.,
delivered the opinion of the Court.
Malachi Cummings, the father of Mrs. Hamilton, verbally purchased, of Wm. M. Adcock, the tract of fifty acres of land, described in the record, at the price of one hundred dollars, and took and held possession thereof, and afterwards sold the same to defendant, for two hundred dollars. He owed a balance of nine dollars and in *681 terest, for which Adcock retained a lien, which was satisfied by Gilbert. Gilbert, at the instance of Cummings, executed two notes payable to Martha Jane Cummings, afterwards Mrs. Hamilton, for the payment of the residue of purchase money; one of said notes being for one hundred and the other for seventy-five dollars, and both falling due 25th December, 1859. The complainants brought suits, before a Justice, on the notes; but alleging that defendant is insolvent, they filed this bill to enforce the vendor’s lien for unpaid purchase money. Defendant resists the relief prayed for on two grounds: first, that the notes belong, in fact, to Cummings, and that he has a valid set-off against them; and, secondly, that the complainants, as he alleges, do not stand in a position to enforce the vendor’s lien.
The original contract between Cummings and Adcock, as well as the contract between Cummings and Gilbert, for the sale of land, was by parol; but it is shown, in evidence, that Adcock made the deed to Gilbert at the instance and request of Cummings, and in accordance with the verbal contract that he would make the title to such person as the latter might direct. Whatever doubts may formerly have existed on the subject, it may be regarded now as the settled law of this State, that “a parol contract for the sale of land, is not entirely void, but may be completed by the voluntary consent of the parties; and it has been laid down as the correct rule that, while the vendor is able and willing and ready to perform the parol agreement, the purchaser can maintain no action to recover back the consideration money paid.” See Hilton v. Dun-
*682 can, 1 Cold., 320; Sneed v. Bradley, 4 Sneed, 304. These cases hold that the sale is voidable rather than absolutely void. There can be no doubt that if the purchase money had not been paid to Adcock, he could have enforced a lien for its payment; and as Cummings was the real vendor of Gilbert, and. made a gift of the unpaid purchase money to his daughter, and caused the notes therefor to be executed to her, we can perceive no valid reason why she shall not be regarded in a court of equity as standing in the relation of vendor to Gilbert, the second purchaser. By the execution of the notes to her, she is subrogated to the rights of the actual vendor, and, as he caused Adcock to make the deed, stands in the same relation as if she had made the deed herself, and Gilbert, by executing the notes to her, is estopped to deny her equitable lien. This question was virtually determined in Dishmore v. Jones, 1 Cold., 556, 557, and it is unnecessary to restate the grounds upon which that case was decided.
It is insisted in the answer and there is evidence tending to show that the object of Cummings, in causing the notes to be executed to his daughter, was to defraud a certain creditor, or his creditors generally, by preventing a garnishment for the debt; but no creditor of Cummings’ is before the Court; and if there was any intentional fraud in the transaction, Gilbert was a party to it, and can not be allowed to take advantage of his own wrong. As between the parties to this suit, the consideration of natural love and affection was sufficient to support the gift to the daughter; and if the father, afterwards, had possession of, or claimed the notes, this circumstance alone would not *683 deprive her of a right which she had acquired by the voluntary assent of all parties.
It seems, that, when the conveyance was made to Gilbert, Cummings remained in possession of the land, for a year or two, under a contract to pay rent, and was turned out of posseesion at the suit of Gilbert, by a writ of unlawful entry and detainer. The facts do not very clearly appear in the record, but there is sufficient evidence to create a well grounded belief that this was not done until Cummings instituted legal proceedings against him and recovered damages for the seduction of one of his daughters, who, it seems, was, for a time, an inmate of Gilbert’s family. The circumstances indicate that the account against Cummings for wheat, salt, bacon, coffee, and other supplies for his family, as well as the claim for rent, originated during the progress of this illicit intercourse, and compensation therefor would not, in all probability, have been demanded, but as a consequence of the suit for seduction. Be this as it may, the account of Gilbert against the father is not, in law or equity, a legitimate set off against the claim of complainants.
The decree of the Chancellor will be reversed, and a decree pronouncd in favor of complainants for the amount of the two notes, with interest and costs, which shall be declared a lien upon the land, to be enforced by ' a sale in the usual manner.